In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00250-CV
_____

AMY SHOULDICE, Appellant

v.

CHRISTINE VAN HAMERSVELD
AND JOHN D. THOMPSON JR., Appellees

On Appeal from the County Court at Law No. 2
Montgomery County, Texas
Trial Cause No. 17-35611-P

MEMORANDUM OPINION

This is the second time the appellant, Amy Shouldice, has complained on appeal that the appellees failed to present sufficient evidence to support the award of attorney's fees the appellees received in a bench trial. In the prior appeal ("*Shouldice* I"), we agreed with Amy's argument that the appellees failed to present the trial court with sufficient evidence to establish the reasonableness and necessity of the

1

award of attorney's fees under the lodestar method used to determine whether the evidence supported the trial court's award.[1] Even though we rejected most of Amy's other complaints in *Shouldice* I about that judgment, affirming it in part, we reversed the judgment as to the attorney's fees award.[2] We remanded the case to the trial court to redetermine the amount (if any) the appellees were entitled to recover as a reasonable and necessary attorney's fee for services their attorneys performed in representing the appellees on their Uniform Declaratory Judgments Act (UDJA) claims.[3]

On remand, the parties tried the attorney's fee issues to the bench. Following the trial, the trial court awarded the appellees $314,816.63 in attorney's fees, with additional awards for fees which the court made contingent on the appellees succeeding on appeal. In Amy's second

---

[1]*See Shouldice v. Van Hamersveld*, No. 09-18-00355-CV, 2020 Tex. App. LEXIS 622, at *14-19 (Tex. App.—Beaumont Jan. 23, 2020, no pet.) (*Shouldice* I) (relying on *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019) and *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

[2]*Id.* at *19.

[3]*Id.*; Tex Civ. Prac. & Rem. Code Ann. § 37.001-.011 (the Uniform Declaratory Judgments Act).

appeal, she argues the trial court abused its discretion by allowing the appellees to recover attorney's fees because:

1) The UDJA doesn't allow the appellees to recover attorney's fees on their UDJA claims since they raised them as a defense to her petition contesting her mother's will;

2) In *Shouldice* I, the Ninth Court of Appeals erred in failing to reverse the trial court's judgment and render a take nothing judgment in Amy's favor on the appellees' claim seeking to recover attorney's fees;

3) The trial court's award of attorney's fees is not equitable and just because it requires Amy to bear the burden of her trial attorney's misconduct; and

4) The evidence supporting the trial court's attorney's fee award is legally and factually insufficient to support the award.

For the reasons explained below, we overrule Amy's issues and affirm the judgment.

## Background

The parties in this case are siblings, the three children of Mary E. Thompson. Mary, a widow, died in August 2017 at the age of 84.[4] Mary signed a will in 2009 naming Christine Van Hamersveld—her oldest daughter—as the independent executor of her estate. Under Mary's will, Mary left her "vehicles, club memberships, clothing, jewelry, household goods, furniture and furnishings, [and] other articles of personal use to her children in equal shares." Mary left the rest of her estate to her trust, the Mary E. Thompson Revocable Trust. That trust was established in 1999. The will includes a no-contest clause, which provides the benefits of the will are revoked as to any person who contests the will. In case of an unsuccessful will contest, Mary directed the benefits that would have otherwise gone to the person contesting her will to the residuary beneficiaries of the will.

When Mary signed the will, she also amended the Mary E. Thompson Revocable Trust. Mary was also the beneficiary of a trust established by her late husband, John D. Thompson. In Mary's will, Mary

---

[4]For brevity and clarity, we will usually refer to the parties in the opinion by their first names.

exercised the powers she had under her late husband's trust to appoint the income and principal of the John D. Thompson Revocable Trust to the Mary E. Thompson Revocable Trust.

Soon after Mary's death, Christine applied to probate the will, which we discussed above. In September 2017, Amy filed a contest to the validity of Mary's will. Among other grounds raised in her contest, Amy claimed Mary lacked the testamentary capacity required to execute a will. In response to Amy's contest, Christine filed a Petition for Declaratory Relief. Less than a month later, Christine was joined by her brother John (Mary's son), and they filed an Amended Petition for Declaratory Judgment, which among other matters concerned Mary's capacity to execute a will and to amend her trust.

Amy didn't prevail on any of the claims she made in the probate court contesting Mary's will.[5] In the previous trial, the trial court found that Amy violated the will's no-contest clause.[6] Three of the trial court's

---

[5]*See Shouldice* I, 2020 Tex. App. LEXIS 622, at *4-5.
[6]The judgment in *Shouldice* I is Exhibit 4 in the exhibits admitted into evidence in the trial on remand.

5

findings in *Shouldice* I specifically referenced the UDJA. There, citing the UDJA, the trial court found that:

1) Mary E. Thompson possessed the requisite mental capacity to execute the Last Will and Testament.

2) Mary E. Thompson possessed the requisite capacity to execute the Third Amended and Restated Mary E. Thompson Revocable Trust.

3) Amy Shouldice violated the no-contest clause of the Last Will and Testament.

In addition to these findings, in *Shouldice* I the trial court found in its judgment that (1) Amy's claim alleging Mary lacked testamentary intent as to her last will was "not meritorious" and that (2) Mary "had capacity to execute the Third Amended and Restated Mary E. Thompson Revocable Trust." The trial court also granted Christine's request asking the court to award $222,906 in attorney's fees as a necessary expense out of Mary's estate.[7] On top of that, the trial court ordered Amy to pay

---

[7]*See* Tex. Estates Code Ann. § 352.051 (allowing the personal representative of the estate on proof satisfactory to the court to recover the reasonable and necessary expenses incurred in representing the estate, which includes "reasonable attorney's fees necessarily incurred in

6

Christine and John $222,906 in attorney's fees based on Amy's claims under the UDJA, finding the fees reasonable and necessary for the services rendered by the attorneys who represented them in the case.

In her appeal in *Shouldice* I, Amy complained about the trial court's rulings (1) imposing discovery sanctions, (2) trying the case without a jury, (3) finding she contested her mother's will in bad faith, (4) overruling her motion for new trial, (5) holding her in contempt, and (6) awarding attorney's fees against her under the UDJA.[8] However, Amy didn't complain the evidence was insufficient to support the attorney's fees the trial court awarded in its judgment under the Estates Code to be paid out of Mary's estate as a necessary expense of administering the estate.[9]

In *Shouldice* I, we overruled all of Amy's complaints except one, finding the evidence insufficient to support the trial court's award of

---

connection with the proceedings and management of the estate"); *id.* § 352.052 (allowing an executor who defends the will or prosecutes any proceeding in good faith and with just cause to be allowed the necessary expenses of the proceeding including reasonable attorney's fees "out of the estate").

[8]*Shouldice* I, 2020 Tex. App. LEXIS 622, at *8-19.

[9]Tex. Estates Code Ann. §§ 352.051, .052(a).

7

attorney's fees awarded on the appellees' UDJA claims.[10] Citing *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019), we explained that "[w]hen fee shifting is authorized, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees." Then, we explained what evidence was needed to support a factfinder's award of a reasonable and necessary fee.[11]

On remand, one witness testified in the trial—Steven Earl—the attorney who appeared as lead counsel for appellees in the proceedings in October 2017. At the appellees' request, the trial court admitted fourteen exhibits into evidence to support Earl's testimony about the necessity and reasonableness of his firm's fees. The exhibits admitted into evidence include sixty-four pages of invoices from Earl's law firm. The invoices detail who performed each task in working on the matters involved in the case, describe the services Earl's firm performed, the time each task took, and the rates at which the tasks were billed. The initials of the person who performed each task is listed in the invoices beside the

---

[10]*Shouldice I*, 2020 Tex. App. LEXIS 622, at *14-19.
[11]*Id.* at *14-15.

description of the tasks performed. Other than Earl, the exhibits include copies of the Texas State Bar profiles of the attorneys whose time entries are included in the invoices in evidence. Earl described his qualifications and experience in handling litigation and probate matters, which he testified included challenges to both wills and trusts.

Earl also testified that after considering the lodestar factors, the exhibits in evidence, and the usual and customary attorney's fee charged for services in Montgomery County, it was his opinion that $399,744 represented a usual, customary, and reasonable award on the appellees' claims for equitable relief. Earl also testified that amount was just and fair under the circumstances involved in the litigation, which he attributed to both Amy and her attorney for causing the litigation to turn "out to be more expensive than the average probate litigation case by the time we went to trial[.]"

When Amy's attorney had his chance in the trial on remand, he asked Earl just eight questions. The entire record of both the questions and answers of Earl's cross-examination consumes just over three pages of the Reporter's Record. Earl conceded the attorney's fees the appellees were requesting in the trial on remand were approximately $170,000

9

higher than the amount the trial court awarded in *Shouldice* I. Yet Amy's attorney was never asked to explain the reasons for the increase. Amy's attorney also asked Earl whether he segregated his firm's charges between the fees incurred in the probate action and the fees incurred in pursuing declaratory relief. In response, Earl explained he reduced what his firm charged by five percent because that was the work he attributed to the work his firm did solely on the claims for his clients under the Estates Code. In the end, the trial court awarded the appellees less than what Earl wanted, awarding $314,816 against Amy on the appellees' UDJA claims. The trial court also awarded $26,250 in additional fees in the event Amy unsuccessfully pursued an appeal.

## Analysis

### *Does the UDJA Apply?*

In her first issue, Amy argues the UDJA doesn't allow the appellees to recover attorney's fees on their UDJA claims since they raised them as a defense to her petition contesting her mother's will. Yet even Amy recognizes in her brief that attorney's fees are available under the UDJA when the defensive claims pleaded under the UDJA raise issues that go beyond the ones raised by the plaintiff. Indeed, Amy concedes that in this

case, the declaratory judgment issues "implicate[d] almost all aspects of the trial and [the] appeal."

The UDJA specifically authorizes executors of estates and heirs to "have a declaration of rights or legal relations in respect to the trust or estate . . . to determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings[.]"[12] In its judgment in *Shouldice* I, which this Court affirmed, the trial court declared that Mary possessed the requisite capacity to execute the "Third Amended and Restated Mary E. Thompson Revocable Trust." The trial court also declared that Amy violated the no-contest clause of the will.

Those two findings would not have been in the judgment based on Amy's pleadings contesting Mary's will. Thus, even though the evidence needed to resolve the issues was related, the issues in the declaratory judgment action and the will contest case were not entirely duplicative.[13]

---

[12]Tex. Civ. Prac. & Rem. Code Ann. § 37.005(3).
[13]*See Cahill v. Cahill*, No. 09-20-00206-CV, 2022 Tex. App. LEXIS 792, at *28 (Tex. App.—Beaumont Feb. 3, 2022, pet. denied).

Above all, the validity of Mary's trust was an important issue, as Amy recognized in her brief. Yet Amy doesn't explain why the trial court's findings upholding the trust and the will's no-contest clause don't have ramifications that go beyond the issues raised by her pleadings contesting Mary's will. We overrule Amy's first issue.

*Was Amy Entitled to Have the Ninth Court Render Judgment in her Favor against Appellees on their Attorney's Fees Claim in Shouldice I?*

In issue two, Amy argues this Court should not have given Christine and John "a second bite at the apple" on their claim against Amy for attorney's fees when there was "a total lack of proof at the first trial." But in *Shouldice* I, we didn't conclude there was a total lack of proof. Rather we explained in detail what evidence the trial court had before it on fees and why it was deficient. In *Shouldice* I, we said that neither the "testimony nor documentary evidence concerning the number of hours required or reasonable hourly rate can be found in the record, which also lacks any description of the work required to respond to an appeal."[14]

---

[14]*Shouldice* I, 2020 Tex. App. LEXIS 622, at *17.

True, we concluded the evidence supporting the attorney's fees awarded in *Shouldice* I was legally insufficient.[15] But that is not the equivalent of no proof. When a party seeking to recover attorney's fees presents evidence that isn't sufficiently detailed to prove the fees were reasonable and necessary under a statute authorizing attorney's fees to be awarded, the proper remedy is a remand and not a rendition of the award.[16] We overrule Amy's second issue.

### Is it Inequitable or Unjust if the Attorney's Fees Awarded Were Incurred, as Amy Claims, Due to Her Attorney's Misconduct?

In issue three and without citing the record, Amy argues it is "most unequitable that the offending counsel escapes and the burden of attorney fees falls upon [Amy]." In her brief, Amy cites just one case to support her argument, *Goughnour v. Patterson*, No. 12-17-00234-CV, 2019 Tex. App. LEXIS 1665, at *45 (Tex. App.—Tyler Mar. 5, 2019, pet. denied). Yet Amy cites *Goughnour* solely for the proposition that a trial

---

[15]*Id.* at *18.

[16]*Rohrmoos*, 578 S.W.3d at 505 (after finding the evidence supporting the attorney's fee award legally insufficient remanding the case to the trial court to redetermine the award); *Long v. Griffin*, 442 S.W.3d 253, 256 (Tex. 2014) (concluding that because "no legally sufficient evidence supports the award under the lodestar method, we remand to redetermine attorney's fees").

court's award of attorney's fees is reviewed for abuse of discretion.[17] Amy didn't provide us with any cites to the record that explain how the attorney who represented her in the first trial, Donnya Banks, increased the fees the court ultimately awarded in the trial on remand. On the other hand, the appellees' brief explains how Amy and Banks abused "the court process." Appellees provided the Court with citations to the Reporter's Record, and they concluded that Amy "was complicit with Banks counsel" in increasing the burden involved with the fees. For instance, appellees explained that Amy's abuse included refusing "to disclose the names of witnesses in the discovery phase of *Shouldice* I."

The probate judge who presided over the trial on remand is the same judge who presided over the trial in *Shouldice* I. After hearing the testimony in the trial on remand and based on her knowledge of the proceedings about who was responsible for the misconduct, the trial court commented in the trial on remand that Amy "was the only one who had control of Ms. Banks."

---

[17] *Id.*

14

The appellate court is a neutral party in resolving the appeal. It's simply beyond this Court's role for it to become an advocate for one of the parties in an appeal.[18] In Amy's appeal, we are not required to search through the Reporter's Records and Clerk's Record to find support for a conclusion where the increased expense resulted from conduct that is solely attributable to Donnya Banks when the brief she filed doesn't provide us with appropriate cites.[19] We also have no duty to search for legal authority to support Amy's position.[20] On the contrary, the Texas Rules of Appellate Procedure requires the appellant's brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."[21] For these reasons, we hold Amy waived her fourth issue.

---

[18]*Golden v. Milstead Towing & Storage*, Nos. 09-21-00043-CV, 09-21-00044-CV, 09-21-00045-CV, 2022 Tex. App. LEXIS 2988, at *4 (Tex. App.—Beaumont May 5, 2022, no pet.).

[19]*Id.*

[20]*Id.*

[21]Tex. R. App. P. 38.1(i); *see also ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) ("The Texas Rules of Appellate Procedure require adequate briefing.").

*Is the Evidence Insufficient to*
*Support the Attorney's Fee Award?*

In issue four, Amy complains the evidence is insufficient to support the attorney's fees the trial court awarded against her in the trial on remand. Because Amy's brief provides us with a very short argument, we quote her entire argument on this issue.

> During the attorney fees trial, Appellees were allowed to present more documentary evidence to support their attorney fee award. Some serious discrepancies were noted and pointed out to the trial court. For instance, without much explanation, Appellees added more than $100,000 in attorney fees from the amounts awarded in the first appeal. This circumstance was pointed out to the trial court and was even noted by her. Still, the trial court awarded with some deletions most of the attorney[']s fees requested. In the declaratory judgment context, these fees must be more than reasonable and necessary, they must be equitable and just. *Bocquet* [*v. Herring*, 972 S.W.2d 19,] 20 [(Tex. 1998)]. Instead, these fees are unjust and overreaching. Appellant submits that the award is still legally and factually insufficient.

*Bocquet* provides the Court with the appropriate standard, but Amy doesn't provide the Court with cites to the testimony she is relying upon in the Reporter's Record or to any of the exhibits that the trial court admitted into evidence.[22] Nor does Amy explain why Earl's testimony and the exhibits the trial court considered are insufficient proof of the

---

[22]*Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998).

reasonableness and necessity of the attorney's fees under the lodestar method given the pervasive role Amy agrees the declaratory judgment claims had in the case. Here, the record includes a great deal more evidence supporting the trial court's award than the record we had when we decided *Shouldice* I.[23]

Even if we believed the evidence the trial court considered in the trial on remand was insufficient to support the amount the trial court awarded in the judgment, it is simply not the Court's role to explain to Amy why the evidence is insufficient to support the award.[24] Rather, the Rules of Appellate Procedure require adequate briefing to support the argument to avoid the argument from being waived.[25] We hold Amy waived her fourth issue by failing to provide us with a brief that complies with Rule of Appellate Procedure 38.1(i).[26]

---

[23]*Shouldice* I,  2020 Tex. App. LEXIS 622, at *16-17.
[24]*Golden*, 2022 Tex. App. LEXIS 2988, at *4.
[25]*See ERI Consulting*,  318 S.W.3d at 880.
[26]Tex. R. App. P. 38.1(i) ("the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

17

Conclusion

Having concluded that Amy's issues either lack merit or were waived, the trial court's judgment on remand is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on October 14, 2022
Opinion Delivered February 16, 2023

Before Golemon, C.J., Horton and Johnson, JJ.